MUNICIPALITY OF GUAYNABO, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, BAYAMÓN PART, Respondent; ELIEZER BENÍTEZ PABÓN ET AL., Interveners.

No. O-67-390.     Decided June 27, 1969.

*Luis Torres Bonet* and *Ramón Mellado González* for petitioner. *Rafael S. Fuentes Rivera* for interveners.

MR. JUSTICE TORRES RIGUAL delivered the opinion of the Court.

Are the garbage collectors of a municipality entitled to receive extra compensation for the hours worked in excess of the legal working day? This is the question raised in this appeal. The facts briefly stated are the following:

A group of garbage collectors of the Municipality of Guaynabo filed a complaint against the Municipality claiming payment for overtime, vacation leave, holidays, and for lunch time worked without compensation. The Municipality requested the dismissal of the complaint relying on the exclusion established in Act No. 379 of May 15, 1948, 29 L.P.R.A. § 285.[1] The trial court refused to dismiss on the grounds of Art. II, § 16 of the Constitution of the Commonwealth, which provides insofar as pertinent that every employee is entitled to an ordinary workday which shall not exceed eight hours of work and that an employee may work in excess of this limit only if he is paid extra compensation, at a rate never less than one and one-half times the regular wage rate.[2]

In *A. D. Miranda, Inc.* v. *Falcón,* 83 P.R.R. 708 (1961) we studied thoroughly the origin of § 16 of Art. II of

---

[1] Section 16 of Act No. 379 provides:

". . . The provisions of sections 271–288 of this title shall not apply to the employees of the Commonwealth Government, of the municipal governments, of the Government of the Capital, or of the agencies and instrumentalities of said governments, excepting such agencies, and instrumentalities as are devoted to agricultural, industrial, commercial or public service enterprises."

[2] Article II, § 16 of the Constitution reads:

"The right of every employee to choose his occupation freely and to resign therefrom is recognized, as is his right to equal pay for equal work, to a reasonable minimum salary, to protection against risks to his health or person in his work or employment, and to an ordinary workday which shall not exceed eight hours. *An employee may work in excess of this daily limit only if he is paid extra compensation as provided by law, at a rate never less than one and one-half times the regular rate at which he is employed.*" (Italics ours.)

the Constitution in its historical context and we concluded that the concept "every employee" referred to in the Constitution did not include traveling salesmen and peddlers. The analysis we made in said case of the hearings, statements, reports and debates of the Constituent Convention showed that the purpose of the Constituent Convention upon adopting this section was to protect, not everyone who works, but the great laboring masses which, "by reason of special abandonment, has historically been in need of, although it has not always received social protection." See Report of the Bill of Rights Committee, 4 Journal of Proceedings of the Constituent Convention 2573, 21 *Rev. Jur. U.P.R.* 25. See also, footnote 9 of *Espasas Dairy, Inc.* v. *Minimum Wage Board*, 96 P.R.R. 796, 800 (1969). In accordance with this interpretation and using the same reasoning in *Communications Authority* v. *Superior Court*, 87 P.R.R. 1 (1962) we excluded the Government employees covered by the Competitive Service from the ambit of the aforesaid constitutional provision. Government employees enjoy full protection provided by the Personnel System of the Commonwealth, which gathers and broadens the basic guarantees included in the Bill of Rights, with the exception that the additional compensation for overtime work is paid by granting compensatory leave. Section 112 of the Personnel Regulations, 3 R.&R.P.R. § 647–112. Said system provides suitable standards to guarantee Government employees vacation leave and sick leave, a permanent employment, participation in uniform compensation plans, retirement plans, and other benefits.

Likewise, irregular government personnel, skilled workers, semiskilled, and nonskilled workers, who are not covered by the Personnel System, are protected by the Regulations for the Employment of Irregular Personnel, 3 R.&R.P.R. §§ 711a–1 to 711a–20. The Personnel Act defines irregular personnel as such personnel who perform duties

and responsibilities of a determinable duration when the conditions and nature of the work render impracticable the creation of positions. 3 R.&R.P.R. § 711a–3.[3] This regulation establishes a regular workday of eight hours providing for the compensation of overtime work at double time on the basis of the regular compensation rate. It also regulates the granting of vacation and sick leave.

■ As it can be seen, regarding the working class—the class covered by the protective mantle of § 16 of Art. II of the Constitution—the Commonwealth Government faithfully complies with the legal working day fixed in that section. It could not be otherwise, since the fundamental purpose of this section is to protect the health, safety, and life of the great laboring mass. In the attainment of such an important social purpose, such a numerous sector of our working class could not be excluded. In that sense, we expressed ourselves in

---

[3] Section 711a–3 provides:

"(a) To all effects of this subchapter, only such personnel whose positions are included in the table of classification of functions for groups of irregular jobs may be designated irregular personnel, provided there is one or more of the following conditions and circumstances present:

(1) Performs temporary work whose nature and duration do not justify the creation of jobs, as this term is defined in the Personnel Act [3 L.P.R.A. §§ 641–678];

(2) Performs intermittent work to such a degree that it would not be convenient to create jobs, as this term is defined in the Personnel Act;

(3) Performs unforeseen tasks, although there is no interruption between the same;

(4) Performs tasks of such nature that no one would be willing to perform them regularly, but for a limited time;

(5) Normally works not more than 2 hours daily, because his services are not needed for a longer period, though they be required daily or regularly.

"(b) Any employee not included within the table and whose services are required in cases of extreme urgency, and whose compensation it is convenient to pay by the hour or the day, shall be considered 'irregular personnel'. No person may be employed under these conditions for a period longer than 30 days during any fiscal year. The compensation shall be fixed, whenever possible, according to the schedules in the Uniform Compensation Plan."

*Martín Santos* v. *U.R.H.C.*, 89 P.R.R. 173, 182 (1963) upon referring to workers employed by government instrumentalities: "From the point of view of health, efficiency, living standard and social justice, said philosophy and the rationale of said public policy have as much sense for the worker or employee in a private industry or business as for the worker or employee doing similar work in a corporation or government instrumentality. . . ."

We do not see any reason why municipal government employees should not enjoy the constitutional protection of the legal working day, just as the employees of the Commonwealth Government do. Petitioner's claim to the contrary is not based on the text or on the spirit of § 16 of Art. II of the Constitution. It is based essentially on the exclusion established in Act No. 379 of 1948[4] and on the argument that this exclusion was in force when the Constitution was approved. It is known that during the debates of the Constituent Convention the need for excluding Government or municipality employees from the aforementioned § 16 was not raised or discussed. *Communications Authority* v. *Superior Court, supra* at p. 10. This happened, despite the fact that said exclusion was well known by the labor leaders present in the Constituent Convention. It is logical to infer that, the language of § 16—"The right of *every employee* . . . is recognized"—being so sharp, the members of the Convention did not have any doubt that said section covered *every* employee without exception.[5] This conclusion is strengthened by the fact that § 16 of Art. II does not make any distinction between the employees of the Government as such, and the employees of the agencies or instrumentalities of the government operating as private businesses or enterprises. How-

---

[4] See footnote 1 for the specific text of this exclusion.

[5] We should bear in mind what we stated in *A. D. Miranda, Inc.* v. *Falcón, supra,* and that we reaffirm herein, "that every employee" does not mean everyone who works, but rather, the "laboring masses".

ever, the sections immediately following, numbers 17 and 18, which cover the right to organize and to bargain collectively, as well as the right to strike and to picket, expressly distinguish between the government employees as such and those employed by the agencies or instrumentalities of the government operating as private businesses or enterprises, recognizing these rights to the latter, but not to the former.[6]

We are aware of the commonly adduced reason of lack of government resources to comply with the provision of the legal working day. In *Martín Santos* v. *U.R.H.C., supra,* we duly answered the budgetary argument stating: ". . . while it is flaunted as an argument for judicial criterion in the liberal or restrictive construction of said laws, we are persuaded to think that the minimum living standards necessary for health and efficiency and maladies of health do not select the bodies of the workers or employees. If said minimum standards and said health protection increase the costs of the respondent Corporation's plans, it might be preferable that said costs be distributed among the whole community, so that, in such infinitesimal degree, the burden becomes lighter for each one rather than have a few bear the burden of the sacrifice, a few who, incidentally, are not economically much

---

[6] Sections 17 and 18 read as follows:

*Section 17.* "Persons employed by private businesses, enterprises and individual employers and by *agencies or instrumentalities of the government operating as private businesses or enterprises,* shall have the right to organize and to bargain collectively with their employers through representatives of their own free choosing in order to promote their welfare." (Italics ours.)

*Section 18.* "In order to assure their right to organize and to bargain collectively, persons employed by private businesses, enterprises and individual employers and by *agencies or instrumentalities of the government operating as private businesses or enterprises,* in their direct relations with their own employers shall have the right to strike, to picket and to engage in other legal concerted activities. [Italics ours.]

"Nothing herein contained shall impair the authority of the Legislative Assembly to enact laws to deal with grave emergencies that clearly imperil the public health or safety or essential public services."

stronger in the community, nor better served than those for whose benefit the respondent Corporation carries out its projects."

Perhaps, the budgetary argument could have had greater gleams of justification when Act No. 379 was approved. But, as it is widely known, our economy has surpassed the narrow economical limits of that time.[7]

■ To sum up, we conclude that the exclusion of municipal employees from the payment of double time for the hours worked in excess of the legal working day, as provided by Act No. 379 of May 15, 1948, does not have the scope of excluding them blindly from the benefit of the minimum compensation of one and one-half time which § 16 of Art. II of the Constitution provides for the working class.

The writ issued will be quashed, and the case will be remanded to the trial court for such further proceedings as might be proper.

Mr. Justice Ramírez Bages is of the opinion that this judgment should be given prospective effect.

---

[7] This is suitably revealed by the following data furnished by the Bureau of Municipal Affairs of the Department of the Treasury: the *Value of the Property* of the municipalities on January 1, 1948 was of $401,496,755, while that same value on January 1, 1968 was of $3,540,318,820; the *Municipal Income* for 1948 was of $16,059,672, as compared with that of $126,973,650 for 1968; the *Available Total Amount* for 1948 was of $22,207,328, while that same item amounted in 1968 to $172,544,310; the *Disbursements* were of $16,135,323 for 1948 and of $133,122,075 for 1968; the *Balance for the Following Year* in 1948 was of $6,072,005, as compared with $39,422,235 for 1968.